UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROOFERS LOCAL 149 SECURITY BENEFIT
TRUST FUND, *et al.,*

    Plaintiffs,

v.

MILBRAND ROOFING GROUP, INC., *et al.,*

    Defendants.
_____/

Case No. 05-60218

Hon. John Corbett O'Meara

## OPINION AND ORDER DENYING
## CROSS-MOTIONS FOR SUMMARY JUDGMENT

Before the court are cross-motions for summary judgment: Plaintiffs' motion for summary judgment against Defendants JKM Roofing Company, Jon Milbrand, and the Milbrand Roofing Group, filed July 24, 2007, and these Defendants' motion for summary judgment against Plaintiffs, filed August 21, 2007. The court heard oral argument on December 6, 2007, and took the matter under advisement. For the reasons set forth below, the court denies both motions.

### BACKGROUND FACTS

Plaintiffs are fringe benefit trust funds affiliated with Roofers Local 149. They are suing Milbrand Roofing Group, Milbrand Roofing Company, JKM Roofing Company, Jon K. Milbrand, William Richardson, and Michael K. Roye to recover delinquent fringe benefit contributions due under a collective bargaining agreement. The court entered a default judgment against Milbrand Roofing Company because it did not respond to the lawsuit (in fact, no one

admits to owning it). Milbrand Roofing Company has ceased doing business during the pendency of this suit. Plaintiffs are pursuing Milbrand Roofing Group and JKM Roofing Company as alleged alter egos of Milbrand Roofing Company. Plaintiffs also claim that the corporate veil should be pierced to hold Jon Milbrand and William Richardson personally liable for the debts of Milbrand Roofing Company.[1]

Jon Milbrand originally owned a company called JKM Enterprises. He had some "union issues" and decided to close JKM Enterprises and open new companies, at least one to continue to do union work and others to do work allegedly not covered by the collective bargaining agreement. Relevant to this suit, Milbrand formed (or bought) Milbrand Roofing Company, JKM Roofing Company, and Milbrand Roofing Group.

The purpose of Milbrand Roofing Company ("MRC") was to perform commercial roofing work, covered by the CBA with the union. MRC was essentially a continuation of JKM Enterprises. No one appears to dispute that MRC was required to make fringe benefit contributions under the CBA. It did make some of those contributions. Milbrand contends that he sold MRC to William Richardson in 2004. Supporting this contention is the fact that MRC later applied to the Michigan Minority Business Development Council for certification as a minority-owned business (Richardson is African American, Milbrand is not). As noted above, the court entered a default judgment against MRC for delinquent fringe benefit contributions in 2006; MRC has since ceased operations.

Milbrand is the sole shareholder of JKM Roofing Company and Milbrand Roofing

---

[1] Since the motions were filed, Plaintiffs and William Richardson have entered into a consent judgment, rendering Plaintiffs' motion moot as to him.

Group. Plaintiffs allege that Milbrand Roofing Group is an umbrella company under which JKM and MRC operated. Milbrand claims that Milbrand Roofing Group has never been operational.

Milbrand claims that JKM Roofing is a shingling contractor, performing mostly residential work, although it has also done commercial shingling. (The union claims that commercial shingling falls under the CBA.) Adding to the confusion, it appears that JKM Roofing was a d/b/a for JKM Enterprises.

Plaintiffs' theory is that Milbrand closed JKM Enterprises and opened Milbrand Roofing Group, Milbrand Roofing Company, and JKM Roofing Company to evade obligations under the CBA. According to Plaintiffs' Milbrand "sold" Milbrand Roofing Company to Richardson solely to obtain minority business status and the ability to bid for work he would not otherwise get. This court has already found that Milbrand retained some control over Milbrand Roofing Company's assets after the sale, as he directed the bookkeeper, Laurie Leffler (who also works for JKM Roofing) which accounts to pay and which not to pay, at least up until sometime in 2005.

## LAW AND ANALYSIS

The issues before the court are as follows: (1) whether, as a matter of law, JKM Roofing Company and Milbrand Roofing Group are alter egos of MRC; and (2) whether, as a matter of law, the corporate veil of MRC should be pierced to hold Jon Milbrand personally liable for MRC's delinquent contributions.

**I.     Standard of Review**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When

reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To successfully oppose the motion, the opposing party must present evidence sufficient for a reasonable jury to find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## II.   Alter Ego Analysis

The alter ego doctrine prevents employers from evading their statutory obligations by merely changing their corporate form. See NLRB v. Allcoast Transfer, Inc., 780 F.2d 576, 579 (6th Cir. 1986). The doctrine is "applied, when appropriate, to treat two nominally separate business entities as if they were a single continuous employer." Id. (quotations omitted). The basic inquiry is "whether two or more coexisting employers performing the same work are in fact one business, separated only in form." NLRB v. Fullerton Transfer & Storage Ltd., Inc., 910 F.2d 331, 336 (6th Cir. 1990). In conducting this analysis, courts consider "whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership." Wilson v. International Bhd. of Teamsters, 83 F.3d 747, 759 (6th Cir. 1996) (quoting Fullerton Transfer, 910 F.2d at 336) (emphasis added). "No one factor is dispositive in determining whether the corporate form should be disregarded in a particular case." Id. at 759. Further, generally a "determination of alter ego status is a question of fact." Id.

### A.   JKM Roofing and MRC

#### 1.   Management

During most of the relevant time period, JKM Roofing was managed solely by Jon

Milbrand, except for a year or so when Steve Gilbert acted as a superintendent in the field. 5/29/07 Milbrand Dep. at 89. Roye was the general manager of MRC and also acted as a purchasing agent for JKM Roofing. The superintendent for MRC was Kevin Cremeens, who was not employed by JKM.

Defendants allege that Milbrand did not manage MRC, and that Richardson was MRC's president. See Roye Dep. at 94. However, MRC's bookkeeper, Laurie Leffler, testified that she took direction from both Mike Roye (the general manager of MRC) and Jon Milbrand. Leffler Dep. at 48-49. Roye testified that Milbrand hired an estimator for MRC, George Venable, and fired another employee. Leffler also testified that Milbrand's involvement with MRC ended sometime in late 2005. Id. at 55.

Although there is evidence that Milbrand controlled both JKM and MRC, there is also some testimony that Milbrand did not have management authority. It does appear that Milbrand's involvement stopped at some point in 2005. The evidence is sufficient for a jury to find that JKM and MRC had overlapping management (Milbrand), but it is not clear from the record that the entities had "substantially identical" management as a matter of law.

### 2. **Business and Purpose**

MRC did commercial hot tar roofing. JKM does shingling only, primarily for the residential market. Although Plaintiffs contend that both companies do "commercial roofing," the record does not support a finding that the business and purpose of these entities was substantially identical.

### 3. **Operation**

JKM has an office in Shelby Township; MRC's office is in Detroit. However, Mike

-5-

Roye did conduct business for JKM while he was in MRC's Detroit office. Likewise, JKM and MRC shared a bookkeeper, Laurie Leffler, who was based in the Detroit office. Leffler testified that she would receive a her paycheck one week from JKM and the next week from MRC. Leffler and Roye's health insurance was obtained through JKM, but apparently MRC paid a pro rata share.

MRC employed unionized workers to perform roofing work. JKM does not employ roofers; rather it subcontracts its shingling work out. MRC employed two estimators that did not work for JKM. JKM employed three salesmen who did not work for MRC.

Financially, however, there appears to be some commingling of funds. Loans went back and forth between MRC and JKM without any loan documentation. JKM did not pay rent to have some of its operations in the Detroit office. Rather, MRC paid the mortgage, which was taken out by Milbrand, who owned the building. Plaintiffs also allege that MRC and JKM shared gas cards, cell phones, and office equipment.

### 4. Equipment

There is no evidence of shared construction/roofing equipment. MRC and JKM may have shared a copier.

### 5. Customers

Plaintiffs allege that MRC and JKM shared customers. The court does not find support in the record for this contention. Defendants assert that there is no such evidence.

### 6. Supervision

Defendants contend that there is no overlap in supervision. Roye was the general manger of MRC; he served as purchasing agent for JKM. Roye testified he did not supervise any

personnel at JKM. There is some evidence, however, that Jon Milbrand gave direction to Leffler and Roye with respect to their work at MRC.

### 7. Ownership

JKM is solely owned by Milbrand. Milbrand also owned MRC, at least until 2004. After that, it appears that he sold the company to Richardson. Although Richardson denied purchasing the company, a signed purchase agreement has been found. Some facts suggest a continued interest by Milbrand, however, such as Milbrand's continued direction to Roye and Leffler after 2004 and the fact that he apparently directed MRC to pay thousands of dollars to JKM Enterprises (which had stopped operating), another company owned by Milbrand.

### 8. Conclusion

Based upon the parties' submissions, it appears that the corporate form of MRC was not entirely respected. Further, there was overlap between MRC and JKM with respect to management, business, purpose, operation, supervision, and ownership. Although Plaintiffs make a persuasive case that JKM and MRC are alter egos, the evidence is not so substantial and undisputed as to require such a finding as a matter of law. This is particularly true given that the determination of alter ego status is case specific and generally a question of fact. Accordingly, the court will deny summary judgment on the issue of whether JKM and MRC are alter egos.

### B. MRC and Milbrand Roofing Group

Milbrand Roofing Group is the alleged "umbrella" company owned by Milbrand. A website printout suggests that MRC, JKM Roofing, and Milbrand Maintenance were all affiliated with Milbrand Roofing Group. Under a management agreement, Milbrand Roofing Group was to provide management and consulting services to MRC. Milbrand has alleged that

Milbrand Roofing Group was never operational. Other than these facts, the parties have not provided any evidence about the involvement of Milbrand Roofing Group with MRC. There is not sufficient evidence in the record to undertake the alter ego analysis. Accordingly, Plaintiffs have not met their burden. The court will deny summary judgment on the issue of whether MRC and Milbrand Roofing Group are alter egos.

## II.     Piercing the Corporate Veil

Plaintiffs also request that the court pierce MRC's corporate veil and hold Jon Milbrand personally liable. Piercing the corporate veil is a method for holding the shareholders liable for the obligations of a corporation. The problem with Plaintiffs' request to pierce MRC's corporate veil is that it is not clear that Milbrand was a shareholder of the company during the relevant time period. Milbrand alleges, and the documentation supports, that he sold the company to Richardson in July 2004. As Defendants point out, Plaintiffs have not cited a case where the court pierced the corporate veil to hold an individual liable who was not a shareholder. Because there is at least an issue of fact regarding who owned MRC, summary judgment on this issue is not appropriate.

Plaintiffs also suggest an alternate theory of liability, that "to the extent that a controlling corporate official defrauds or conspires to defraud a benefit fund of required contributions, the official is individually liable under Section 502 of ERISA." Leddy v. Standard Drywall, Inc., 875 F.2d 383, 388 (2d Cir. 1989). The individual defendant in Leddy had been convicted of conspiring to defraud the plaintiff pension funds. The defendant was a major shareholder and controlling officer of the company. See also Sasso v. Cervoni, 985 F.2d 49, 50-51 (2d cir. 1993) (noting that "special circumstances, beyond an individual's officer status or corporate duties,

might warrant the imposition of personal liability for a corporation's ERISA obligations," such as the case where an officer acts in concert with a fiduciary in the breach of fiduciary duty).

In this case, Plaintiffs have not sufficiently elaborated on this theory of liability to warrant summary judgment. Plaintiffs have not shown that Milbrand defrauded the funds or acted in concert with a fiduciary in the breach of a fiduciary duty. See Sasso, 985 F.2d at 51 (declining to impose individual liability based solely on defendant's "dominant role in the affairs of a corporate employer" and in the absence of fraud, breach of fiduciary duty, or evidence sufficient to pierce the corporate veil).

### III.    Milbrand's Fiduciary Status

Although not raised in Plaintiffs' motion, Defendants seek a ruling from the court regarding Jon Milbrand's status as a fiduciary of Plan assets. At oral argument, Defendants recognized that the court already ruled that Milbrand was a fiduciary, for a certain time period in 2005. Defendants requested that the court find that Milbrand was not a fiduciary after that time period. Defendants' written motion does not, however, make any distinction with respect to time period. Rather, Defendants appear to reargue that Milbrand was never a fiduciary, despite previous rulings from the court. Defendants' Br. at 14-17; see also Orders dated March 14, 2007 (docket no. 104) and June 20, 2007 (docket no. 183). Understandably, Plaintiffs responded that this issue was moot and did not address the substance.

The court finds that the issue of Milbrand's fiduciary status, to the extent not already ruled upon by the court, has not been properly raised or briefed at this time. Defendants' motion did not frame the issue in a way that permitted Plaintiffs to respond. Accordingly, the court will deny Defendants' request for summary judgment.

## **ORDER**

IT IS HEREBY ORDERED that Plaintiffs' July 24, 2007 motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that Defendants' August 21, 2007 motion for summary judgment is DENIED.

                                        s/John Corbett O'Meara
                                        United States District Judge

Date: January 3, 2008

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, January 3, 2008, by electronic and/or ordinary mail.

                                        s/William Barkholz
                                        Case Manager